**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD SCHIAVONE, individually and as Trustee of the Ronald A. Schiavone Living Trust, | *1157*<br>Civil Action No. 08-~~1357~~ (SDW) |
| Plaintiff, | **OPINION** |
| v. | September 14, 2009 |
| RAYMOND J. DONOVAN, | |
| Defendant. | <u>**CASE CLOSED**</u> |

**WIGENTON**, District Judge

Before the Court is a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) brought by Defendant Raymond J. Donovan. The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78.

**I.     <u>Factual And Procedural Background</u>**[1]

Donovan worked for Schiavone Construction Company ("SCC") in New Jersey for 49 years. (Donovan Decl. ¶ 6.) Over time he acquired a significant amount of SCC stock, valued at approximately $75,000,000. (Ross Decl. Ex. A, Donovan Dep. 17:2–19:7, Feb. 9, 2009.) In November 2007, when it appeared that SCC was to be sold, Donovan and his wife Catherine (the "Donavans") began taking steps toward making Florida their primary residence. (Donovan Decl. ¶ 5–6.) They have owned a home in Boca Raton, Florida since 1975. (Id. ¶ 4–5.) On November 8, 2007, the Donovan signed under oath a "Declaration of Domicile" in which they declared their

---

[1] In considering a Rule 12(b)(1) motion, the Court is not limited to the allegations presented in the complaint. Instead, it "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"intention to maintain [his] Florida residence as [his] permanent home." (*Id.* ¶ 12(a); Ex. A.) On November 28, 2007, the Donovans applied for and were later granted tax exemptions for his home as a permanent resident of Florida. (*Id.* ¶ 12(d); Ex. D.) That same day, they abandoned their New Jersey driver's licenses and acquired Florida driver's licenses. (*Id.* ¶ 12(b); Ex. B.) Also on November 28, 2007, the Donovans registered to vote in Palm Beach County Florida and Donovan thereafter voted in Florida in three instances. (*Id.* ¶ 12(c); Ex. C.) In November or December, 2007, the Donovans sent a letter to numerous recipients informing them of their change of mailing address to their Florida residence. (*Id.* ¶¶ 12(e)–(f), (i); Exs. E, F, H.) At some point prior to February 4, 2008, Donovan registered and insured an automobile in Florida. (*Id.* ¶ 12(g); Ex. G.) In February 2008, he opened an account with a Florida bank and acquired a safety deposit box. (*Id.* ¶ 12(h).) Also in February 2008, he met with an attorney in Florida to revise his estate plan to conform with Florida law and procedure. (*Id.* ¶ 12(j); Exs. I–J.) Donovan also spent an uninterrupted six-month period in Florida in late 2007 and early 2008.

Since December 2007, Donovan has significantly reduced his involvement with SCC, although paychecks have been deposited in his account and he maintained use of a company vehicle. (Ross Decl. Ex. A, 13:3–21). He also engaged in multiple telephone conferences with SCC management and consulted with them on certain important decisions. (*Id.* at 19:14–37:18.) Donovan also receives health care and disability insurance coverage from SCC. (*Id.* at 13:3–21.) Donovan maintains a cellular phone number with a New Jersey exchange. (*Id.* at 49:19–50:16.) He also maintains a charitable trust in New Jersey that supports mainly New Jersey causes. (*Id.* at 9:5–12:2.) Finally, Donovan has a checking account with Wachovia bank in New Jersey (Ross Decl., Ex. I.), and maintains accounts with J.P Morgan Chase, also in New Jersey. (*Id.* Ex. J.)

On May 20, 2008, the Donovans purchased a new house in Harding, New Jersey, for $2,750,000. (*Id.* Ex. F.) On July 19, 2008, they placed their home in Millburn, New Jersey— which they had continuously owned and occupied since 1967—up for sale. (Ross Decl. Ex. B, 10:21–11:9.) This house eventually sold for $1,325,000. (*Id.* Ex. E.) Donovan moved the belongings in the Millburn house to the Harding House. (*Id.* Ex. B at 11:12–20.) The Harding house is somewhat closer to the residences of the Donovan's children. (*Id.* Ex. G.) The Donovans have also owned a home in Florida since 1975. (*Id.* Ex. B, 18:10–13.) The last estimate of the Florida home's value was $1,300,000. (*Id.* Ex. B, 21:25–22:2.)

Plaintiff Schiavone filed the current action in this Court on March 6, 2008. The Complaint alleges that Schiavone suffered damages as a result of Donovan's conduct related to his sale of stock in Schiavone Construction Company. The Complaint alleges subject matter jurisdiction is proper pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The Complaint alleges that diversity exists because Schiavone is a citizen of Florida and Donovan is a citizen of New Jersey. Defendant claims he is a Florida citizen, and as such, the parties are not diverse and the court lacks subject matter jurisdiction.

**II.   Discussion**

"A party's citizenship for purposes of subject matter jurisdiction is synonymous with domicile." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400-401 (3d Cir. 2008). An individual's domicile is his "true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Id.* at 401 (quoting *McCann*, 458 F.3d at 286). "An individual can change domicile instantly [if] he take[s] up residence at the new domicile and intend[s] to remain there." *McCann*, 458 F.3d at 286. Furthermore, "[a] party's domicile is determined as of the moment the complaint is filed." *McCracken v. Murphy*, 129

3

Fed. Appx. 701, 702 (3d Cir. 2005) (citing *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)).

There is a general "presumption favoring an established domicile over a new one." *McCann*, 458 F.3d at 286-87. Because Donovan is opposing federal jurisdiction based on his new domicile in Florida, he "bears the initial burden of producing sufficient evidence to rebut the presumption in favor of established domicile." *Id*. at 288. The initial burden of production to rebut the presumption of established domicile requires "the party asserting a change in domicile [to] . . . produce enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue." *Id*. If the party asserting a change in domicile is able to rebut the presumption, the presumption disappears and the party asserting diversity jurisdiction then has the burden to prove that such diversity exists. *Id*. Diversity of citizenship must be proven by a preponderance of the evidence. *Id*. at 286 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

In order to determine a party's domicile, courts have looked to a variety of factors including "establishment of a home, place of employment, location of assets, registration of a car, and generally, the center of one's business, domestic, social and civic life." *Frett-Smith*, 511 F.3d at 401 (citing *Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995)). Courts have also looked to "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business . . . location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license." *McCann*, 458 F.3d at 286 (internal citations and quotations omitted). Voting registration is often considered a critical indicia of domicile. *See Lundqvist v. Precision Valley Aviation*, 946 F.2d 8, 12 (1st Cir. 1991).

In *Doe v. Schwerzler*, the Court found that a plaintiff asserting diversity jurisdiction had established a new domicile in Kentucky. *Doe v. Schwerzler*, No. 06-3529, 2008 WL 1781986 (D.N.J. April 17, 2008). In that case, the Court relied on the fact that plaintiff had registered to vote, leased property, paid utilities and state income taxes, opened a bank account, and got a driver's license, all in Kentucky. *Id.* at \*3. In *Frett-Smith*, the Third Circuit held that a plaintiff had abandoned domicile in Florida and established domicile in the U.S. Virgin Islands when she established a residence and became employed there, obtained a driver's license and relinquished her Florida license, and stated that she intended to remain there. *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2007).

Similar to the plaintiffs in *Frett-Smith* and *Doe*, Donovan has produced credible evidence that he: 1) registered to vote in Florida and did so three times, two of which were in person; 2) obtained a Florida driver's license and abandoned his New Jersey driver's license; 3) owned property in Florida; 4) opened a Florida bank account and safety deposit box; 5) received a tax emption in Florida; 6) made a Declaration of Domicile in Florida; 7) received a tax emption for permanent residents of Florida; 8) met with Florida attorneys and had his will altered to conform with Florida law; 9) registered a vehicle in Florida and maintained Florida automobile insurance; 10) sent letters to numerous companies and agencies informing them of a change in permanent address to Florida and; 11) swore under oath that he intended to remain in Florida as a citizen of the state. This is ample evidence for Donovan to meet his burden of production in order to rebut the presumption in favor of his New Jersey domicile. *See McCann*, 458 F.3d at 288; *See also Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 51 (1st Cir. 1992) (holding that defendant's affidavit stating that he moved to Texas, worked, registered to vote, had a driver's license there, and changed his mailing address to Texas was sufficient to rebut the presumption favoring his

old domicile of Massachusetts). With the presumption gone, Schiavone must establish by a preponderance of the evidence that diversity jurisdiction exists because Donovan is still domiciled in New Jersey. *Id.* at 286.

In arguing that Donovan is domiciled in New Jersey and that diversity jurisdiction exists, Schiavone has produced evidence indicating that Donovan: 1) purchased a more expensive home in New Jersey closer to his children and moved his personal property from his former New Jersey home into the new home; 2) maintained employment (albeit in a decreased role) with a New Jersey company; 3) maintained use of a company vehicle in New Jersey; 4) maintained a New Jersey bank account; 5) maintained a New Jersey charitable trust focusing on New Jersey causes and; 6) maintained a New Jersey cellular phone number.

Schiavone also seeks to discredit Donovan's declaration of domicile as self-serving and inconsistent with his course of conduct. (Pl.'s Br. 7.) Schiavone relies on *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968), in which the court stated that "[o]ne's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words." Here, unlike the plaintiff in *Korn*, Donovan's words are supported by his actions. In *Korn*, the Court stated that "plaintiff's 'entire course of conduct' before and after his arrival at St. Thomas, contradicts and negates his self-serving declarations." Such is not the case here. Donovan has produced ample evidence to support his declaration of domicile.

Schiavone also argues that Donovan was motivated by nefarious tax evasion purposes in trying to establish a Florida domicile. However, motive in changing domicile is irrelevant for purposes of diversity jurisdiction, except as used to show inconsistencies in evidence before the

court. *See Dakuras v. Edwards*, 312 F.3d 256, 259 (7th Cir. 2002); *Bank One*, 964 F.2d at 53; *Janzen v. Goos*, 302 F.2d 421, 425 (8th Cir. 1962).

Schiavone cites to *Galva Foundry Co.*, for the proposition that Donovan remained domiciled in New Jersey. *Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir. 1991). In *Galva*, the 7th Circuit found that a defendant had failed to show a change in domicile from Illinois to Florida. *Id.* Although many of the facts in *Galva* are similar to those in this case, there is one major difference: the defendant in *Galva* spent almost all of his time in Illinois rather than in Florida. *Id.* at 730. Indeed, the Seventh Circuit stated that "he may decide to retire to Florida eventually, but for the foreseeable future he intends to spend most of the year in Peoria, as he has always done." *Id.* Here, the evidence shows that Donovan and his wife have effectively retired to Florida and spend most of their time there. As evidence of this, Donovan has produced records from a Florida golf club showing his extensive use of club facilities throughout 2008. (Donovan Reply Decl. Ex. A.)

While Schiavone has presented some evidence to support Donovan's New Jersey domicile, the preponderance of the evidence favors a Florida domicile. Although Donovan retains ties to New Jersey, it is clear that at the time the Complaint was filed, he had changed his domicile to Florida. *See Rubin v. Hirschfeld*, 2002 WL 32506932, *3 (D. Conn. Mar. 20, 2002) (finding that despite defendant's present business and family ties to Connecticut, a preponderance of the evidence established that defendant was domiciled in Florida because he intended to remain there and not in Connecticut.) The fact that Donovan also maintains a home in New Jersey—regardless of its cost and location relative to his children—is not sufficient to negate the substantial evidence that Florida is Donovan's "true, fixed, and permanent home and place of habitation." *Frett-Smith*, 511 F.3d at 396. Nor is this Court persuaded by the fact that

7

Donovan had bank accounts, charitable interests, and ties to his former employer in New Jersey when the Complaint was filed. As such, Schiavone has not met his burden to establish that Donovan is a Citizen of New Jersey and that diversity jurisdiction exists. Because the parties are not diverse, this Court lacks subject matter jurisdiction. *See Caterpillar*, 519 U.S. at 68.

## III.   Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED. Plaintiff's amended complaint is DISMISSED.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.